### EASTERN TEXAS TRACTION CO. et al. v. HARRISON et al. (No. 1619.)*

(Court of Civil Appeals of Texas. Texarkana. July 6, 1916. Rehearing Denied Oct. 5, 1916.)

1. RAILROADS ⊂⊃17—VALIDITY — BREACH — LIABILITY.

Where the officers of a traction company, as a personal speculation, contracted with property owners, in return for a bonus, to purchase certain lots and have the depot and terminals of the traction company erected thereon, but failed, after purchasing the lots, to have the offices of the company established there, they were liable to the parties who paid them the bonus for its return, together with stipulated interest, according to their contract.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 36–38; Dec. Dig. ⊂⊃17.]

2. RAILROADS ⊂⊃58—CONTRACT OF OFFICERS —CONSTRUCTION AS PERSONAL.

Where the officers of a traction company contracted with certain property owners, in return for a bonus, to buy lots and construct and maintain thereon the depot and terminal station buildings of the traction company, which contract was signed by the officers without designating themselves as such, it was to be construed as their personal engagement, and not as that of the company.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 130, 131, 133, 135, 136; Dec. Dig. ⊂⊃58.]

3. RAILROADS ⊂⊃58 — CONTRACT—CONSTRUCTION.

Where officers of a traction company agreed with property owners, in return for a bonus, to purchase lots and erect and maintain thereon the terminal buildings of the traction company, and a following bond contained the assent and ratification of the traction company to maintain its offices in the city, such bond did not necessarily include an agreement by the company to construct the buildings in accordance with the undertaking of its officers.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 130, 131, 133, 135, 136; Dec. Dig. ⊂⊃58.]

4. RAILROADS ⊂⊃58—LOCATION OF STATIONS —ULTRA VIRES CONTRACT.

A traction company might itself, in return for a bonus have made a contract with property owners in a city to buy lots and erect and maintain its terminal buildings thereon, and could have bound itself to return the bonus if it failed to perform.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 130, 131, 133, 135, 136; Dec. Dig. ⊂⊃58.]

5. RAILROADS ⊂⊃58—LOCATION OF STATIONS —ULTRA VIRES CONTRACT.

Where the officers of a traction company, in return for a bonus, contracted with property owners to buy lots in the city and erect and maintain the company's terminal buildings thereon, the bond executed by the company and the officers personally engaging to guarantee that the officers, should they fail to perform, would return the money received, was not ultra vires as to the corporation.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 130, 131, 133, 135, 136; Dec. Dig. ⊂⊃58.]

6. CORPORATIONS ⊂⊃432(1) — OFFICER — AUTHORITY TO EXECUTE BOND—PRESUMPTION.

Where a corporation's bond is offered in evidence without any objection, the presumption is, in the absence of evidence to the contrary, that the officer who signed it was duly authorized.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1718, 1726, 1743, 1762; Dec. Dig. ⊂⊃432(1).]

7. TRUSTS ⊂⊃70—RESULTING TRUST—BONUS TO SECURE PURCHASE OF LOTS.

Where, in return for a bonus, the officers of a traction company agreed with property owners in a city to purchase lots and erect and maintain the terminal buildings of the traction company thereon, and the money donated was used in the purchase of the lots, having been advanced with the understanding that the title should be vested in the officers, it never having been contemplated that the property owners should have any interest, there was no resulting trust in favor of the property owners, since the law will not imply a trust where the parties did not intend that any interest should vest, and there was no diversion of the funds.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 95–97; Dec. Dig. ⊂⊃70.]

Appeal from District Court, Hunt County; A. P. Dohoney, Judge.

Suit by Will N. Harrison and others against the Eastern Texas Traction Company and others. From a judgment for plaintiffs, defendants appeal. Judgment reformed and affirmed.

Joseph F. Nichols and Sherrill & Starnes, all of Greenville, for appellants. B. M. McMahan and H. L. Carpenter, both of Greenville, for appellees.

HODGES, J. In July, 1913, the appellants White and Crotty were officially connected with the appellant Eastern Texas Traction Company; one of them as its president, and the other as its vice president and general manager. The Eastern Texas Traction Company was a private corporation organized to construct and operate an interurban railway between Greenville and Dallas. The appellees are the owners of property in Greenville; and for the purpose of securing the benefits resulting from the location and the maintenance of the office and terminal buildings of the traction company upon certain lots in the city of Greenville entered into the following contracts:

"In consideration that J. W. Crotty and Forest E. White will buy lot No. 1 in block 202 in Greenville, Hunt county, Texas, known as the J. B. Clayton's corner on West Lee street, and lot No. 15 in block No. 202, immediately

---

south of said lot, known as the Mrs. Bessie Little's lot, and will construct and maintain on said lots the depot and terminal station buildings of the Eastern Texas Traction Company, the undersigned, as trustee for certain property owners who will be benefited by the location and maintenance of said station and office on said lots, and have subscribed the $4,250.00 herein mentioned, agrees to pay to said Crotty and White the sum of $4,250.00 on the purchase price of said lots, when the purchase of said lots is consummated by said Crotty and White. And the said Crotty and White hereby obligate themselves to buy said lots as aforesaid and commence to erect thereon the station buildings aforesaid, within a period of six months from this date, and complete same within twelve months from date hereof, and guarantee that the said Eastern Texas Traction Company will establish and maintain its said depot and terminal station on said premises; and they further guarantee that the said improvements on the said lots shall be at least the fair cost of $10,-000.00.

"This contract shall become effective when ratified by the said traction company by proper resolution entered on its minutes, and its assent in writing appended hereto, and when a legal and sufficient guaranty for the faithful performance of their agreements by Crotty and White and the traction company is entered into; and upon full compliance by said White and Crotty with their covenant therein, said trustee shall execute to them a full release of this contract.

"Executed in duplicate this the 24th day of July, 1913.        [Signed]   J.  W.  Crotty.
                              "F.  E.  White.
    *[Signed]   C.  M.  Portwood.

"Bond.

"In consideration of the benefits to accrue to it and other good considerations, the Eastern Texas Traction Company hereby assents to and ratifies the foregoing contract on the part of Crotty and White, as to the location and maintenance of its depot and station terminals in the city of Greenville, and the said J. W. Crotty and Forest E. White, as principals, and the said Eastern Texas Traction Company, a corporation, and L. E. Birdsong, hereby jointly and severally acknowledge ourselves to owe and be indebted to C. M. Portwood, trustee, in the full sum of $5,000.00, payable to said trustee, at Greenville, Texas.

"The condition of this obligation is that whereas, if all of the aforesaid covenants and conditions as to the erection and construction and establishment and maintenance of the depot and station terminals on said premises is not fully performed, then the said Crotty and White will repay to said trustee, or his successor, for the benefit of the respective subscribers to said fund, the full sum of money so subscribed, with 8 per cent. interest per annum thereon, and all costs and expenses of collection, if any.

"Witness our hands this 24th day of July, 1913.   [Signed]   F.  E.  White.   J.  W.  Crotty. Eastern Texas Traction Co., By F. E. White, President.   L.  E.  Birdsong.   Attest: [Signed] I. A. Miller, Secretary."

At the expiration of the time stipulated no steps had been taken by Crotty and White to perform their undertaking; and some of those who had contributed to the fund of $4,250 were unwilling to extend further time, and demanded the return of their portion of the contribution. The appellees were those who were willing to give more time, and accepted from Crotty and White the following obligation:

"Supplemental Agreement.

"It is agreed between J. W. Crotty and F. E. White, first parties, and C. M. Portwood, for himself and as trustee for the other subscribers to interurban station site bonus, second parties:

"(1) That Crotty and White will not repay to said trustee et al. the sum of $1,650.00 of the bonus heretofore paid them.

"That they will begin or cause to be begun in good faith the erection of the station and terminal buildings provided for in the original contract, on or before April 15, 1914, and complete the same within six months from that date.

"That they will pay interest on the $4,250.00 from July 24, 1913, to April 14, 1914, at 8% per annum, to be deducted from the $1,650.00 to be repaid by trustee et al.

"That the said trustee et al. agree to and hereby extend time for commencement and construction of said buildings to the periods aforesaid, and agree to repay said $1,650.00 to Crotty and White or their assigns, when the foundation of said buildings have been made and material on the ground and construction of walls shall have reached at least six feet in height, but the amount of interest aforesaid shall be deducted from the sum to be so repaid.

"Said Crotty and White will convey the lots to, and cause a further obligation to be made by the Eastern Texas Traction Company, for the construction and maintenance of its depot and terminal station upon said premises in said city of Greenville, as a condition to being entitled to the said bonus.

"The original contract between the parties as to said matters is continued in force, except as amended hereby.

"Executed in duplicate this 29th day of January, A. D. 1914.
            "[Signed]   White  and  Crotty,
                              "By J. W. Crotty."

It appears that the $1,650 referred to in this instrument was paid over to those of the original contributors who refused the extension of time. Before the expiration of the time limit last referred to Crotty and White had purchased the lots and had received the bonus of $4,250, but have never constructed the buildings contemplated, nor has the traction company ever established its offices upon the lots mentioned.

The appellees instituted this suit against Crotty and White and the Eastern Texas Traction Company for the purpose of recovering the sum of their respective contributions to the bonus paid to Crotty and White, and interest thereon at the rate of 8 per cent. per annum as stipulated in the original agreement. They also asked that a resulting trust in the lots purchased by Crotty and White be declared in their favor. In a trial before the court without a jury a judgment was rendered establishing the trust as prayed for and awarding in favor of each of the contributors a judgment for that portion which he had contributed, together with interest thereon at the rate of 8 per cent. per annum from the time the contributions were made.

[1] In so far as Crotty and White are concerned in this appeal, it may be said that they are without any meritorious defense as to the personal liability adjudged against them in the court below. In consideration of a bonus received they had agreed to pur-

chase the lots referred to in their contracts and to construct thereon certain buildings, and guaranteed that the offices of the traction company would there be located and maintained. They have failed to perform the material parts of their engagements, and there is no reason why they should not return the bonus, together with the stipulated interest, according to their contract. The benefits which the appellees were to receive and which induced them to make their contributions were the results of having the offices of the traction company established and maintained upon the lots in question. The mere change in the ownership of the lots, caused by their purchase by Crotty and White, did not produce the benefits which formed the consideration of the agreements. According to their testimony Crotty and White entered into this enterprise as a personal speculation, and not as agents of the traction company. They cannot, therefore, evade the legal consequences of their failure to perform their contract.

[2-5] The traction company, however, denies liability, upon the ground that the terms of the contracts do not bind it to perform any of the engagements undertaken by Crotty and White, and upon the further ground that the bond to which it is ostensibly a party was executed in its name by White without any authority. It also pleads that this bond undertakes to bind the traction company to the performance of an ultra vires undertaking. It is evident that the first and principal contract entered into by Crotty and White on July 24, 1913, should be construed as their personal engagement to bring about the stipulated conditions. The bond which followed contains the assent and ratification of the traction company to maintain its offices in the city of Greenville, and inferentially it may be said upon the lots in question. This does not necessarily include an agreement by the traction company to construct the buildings in accordance with the undertaking of Crotty and White. If the traction company therefore is liable at all, it must be held on the bond it entered into with Crotty and White. This is an engagement, it is true, to guarantee that Crotty and White, in the event they failed to perform their agreements regarding the property to be purchased and improved, would return the money they had received. The traction company was not wholly without interest in this enterprise. Crotty and White were endeavoring to secure lots on which to erect buildings to be occupied by it in the necessary conduct of its business. It had in effect agreed to occupy and use those buildings when constructed. Its guaranty was given evidently to enable Crotty and White to secure the lots. It might as an original undertaking have made just such a contract with the contributors as Crotty and

White had entered into, and could have bound itself to return the bonus in the event it failed to erect the buildings and maintain its offices there. The evidence shows that Crotty and White subsequently conveyed the lots purchased by them to the traction company; that the latter began the erection of buildings thereon, and abandoned the work because of the lack of funds. We conclude that the contract was not ultra vires.

[6, 7] It is further contended that White had no authority to execute the bond in the name of the traction company; that his act in signing its name to that instrument was a usurpation of authority. The bond was offered in evidence without any objection, and the presumption is, in the absence of evidence to the contrary, that the officer who signed it was authorized to do so. 14 Ency. of Evidence, p. 741. The evidence shows that White and Crotty were the executive officers of the traction company, and in the active management of its business affairs. We think, however, that the portion of the judgment of the trial court which undertook to establish in favor of the appellees a resulting trust in the lots is without support in the evidence. While the money donated was used in the purchase of the lots, it was advanced as a bonus and with the understanding that the title to the property should be vested in Crotty and White. It was never contemplated that the appellees should themselves have any interest in the lots. The law will not imply a trust where the parties did not intend that any interest should vest, and there was no diversion of the funds.

The judgment will accordingly be reformed and affirmed.